## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **JAMES BARNES, JR.** | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:11-CV-526-Y** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **COMMISSIONER OF SOCIAL SECURITY,** | § | |
| **DEFENDANT.** | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b).  The Findings, Conclusions and Recommendation of

the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff James Barnes, Jr. ("Barnes") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying his claims for disability insurance benefits under Title II

and supplemental security income ("SSI") benefits under Title XVI of the Social Security Act

("SSA").

In June 2009, Barnes protectively applied for disability insurance and SSI benefits, alleging

disability commencing on April 22, 2009.  (Tr. 11, 118-26.)  After his applications for benefits were

denied initially and on reconsideration, Barnes requested a hearing before an administrative law

1

judge (the "ALJ"). (Tr. 7, 11, 50-66; *see* Tr. 67-70.) The ALJ held a hearing on May 19, 2010 and issued a decision on June 11, 2010, in which he found that Barnes was not disabled and was not entitled to disability insurance or SSI benefits because he retained the ability to perform several jobs that occurred in significant numbers in the national economy. (Tr. 8-41.) The Appeals Council denied Barnes' request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-5.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments

2

that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the

3

Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.[1]

## III. ISSUES

Barnes presents the following issues:

1. Whether the ALJ committed legal errors at Step Five and whether his decision at Step Five is supported by substantial evidence;[2]

2. Whether the ALJ erred by failing to make a finding that Barnes could maintain employment over a sustained period of time;

3. Whether the ALJ improperly evaluated Barnes' credibility; and

4. Whether the ALJ applied the correct legal standard in weighing the treating source opinions.

## IV. ADMINISTRATIVE RECORD AND ALJ DECISION

In his June 11, 2010 decision, the ALJ found that Barnes met the disability insured status requirements of the SSA through at least December 31, 2013 and that he had not engaged in substantial gainful activity since April 22, 2009, the date of his alleged onset of disability. (Tr. 17.) The ALJ further found that Barnes had the severe impairments of "an on-the-job injury to his cervical spine with C3-4 anterior cervical discectomy and fusion, a history of back surgeries, and a history of bilateral carpal tunnel syndrome." (Tr. 17; *see* Tr. 12.) Next, the ALJ held that none of Barnes' impairments or combination of impairments met or equaled the severity of any impairment in the Listing. (Tr. 12, 17.) As to Barnes' RFC, the ALJ stated that Barnes had the "capacity to

---

[1] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

[2] Barnes, in his brief, divides this issue into two separate issues. (Pl.'s Br. at 4-10.) Because the issues are interrelated, the Court will address both in the same section.

4

perform the physical exertional requirements of light work" and there were "no significant nonexertional limitations." (Tr. 17; *see* Tr. 16.)  Relying on this RFC assessment, the ALJ opined that Barnes was not able to perform his past relevant work as a construction worker.  At Step Five, the ALJ found, based on the application of the Medical-Vocational Guidelines ("GRIDS"), that Barnes was not disabled because there were several jobs that existed in significant numbers in the national economy that Barnes could perform. (Tr. 16-18.)

## V. DISCUSSION

### A. Step Five Issues

Barnes argues that the ALJ made, in essence, the following errors at Step Five of the disability evaluation process: (1) the ALJ applied the GRIDS at Step Five of the disability evaluation process without properly considering his nonexertional impairments; (2) the ALJ decided the case at Step Five without questioning the vocational expert ("VE") and without giving Barnes the opportunity to cross examine the ALJ's evidence; (3) the ALJ stated at Step Five that there were jobs in the national economy that Barnes could perform without stating any specific examples of jobs that existed or how many existed in Barnes' region; and (4) substantial evidence does not support the ALJ's decision at Step Five. (Pl.'s Br. at 4-10.)

As to Barnes' first argument, when the Commissioner decides at Step Five that a claimant can perform available, alternative employment, that decision must be supported by substantial evidence. *Allsbury v. Barnhart*, 460 F. Supp. 2d 717, 721 (E.D. Tex. 2006).  Typically, the Commissioner satisfies this burden in one of two ways. *Id.*; *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  The first way is that the Commissioner can receive testimony from a vocational expert or consider similar vocational resource evidence. *Allsbury*, 460 F. Supp. 2d at 721.  The

5

second way is that the "Commissioner can take administrative notice of [the] availability of alternative work by consulting predetermined findings contained" in the GRIDS.[3]  *Id.*

The GRIDS provide an analysis of the various vocational factors such as age, education and work experience in combination with the individual's residual functional capacity for work in evaluating a claimant's ability to engage in substantial gainful activity.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00.  Where findings of fact coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the claimant is or is not disabled.  *Id.*  The GRIDS are to be used when a claimant has an impairment that causes the claimant to have limitations in meeting the strength requirements for a job.  *Id.*  "Use of the [GRIDS] does not violate the [SSA] and is judicially approved as a fair and just method of determining disability."  *Nobles v. Comm'r of Soc. Sec. Admin.*, No. 9:00-CV-128, 2002 WL 553735, at *3 (E.D. Tex. Apr. 10, 2002) (citing *Heckler v. Campbell*, 461 U.S. 458 (1983)).

However, the GRIDS may not be fully applicable where the nature of a claimant's impairment is nonexertional, such as when a claimant has certain mental, sensory, or skin impairments.  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e).  The Fifth Circuit has held that the use of the GRIDS is appropriate when a claimant suffers only from exertional impairments or if a claimant's nonexertional impairments do not significantly affect his RFC.  *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Carry v. Heckler*, 750 F.2d 479, 483 n.9 (5th Cir. 1985).  When the claimant has a nonexertional factor that limits the range of jobs a claimant can perform, the ALJ cannot rely on the GRIDS and must rely on

---

[3] The GRIDS consist of three tables (for sedentary, light, and medium work) which may be consulted once a claimant's RFC capacity is determined.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201-03.  The tables direct conclusions of disability or non-disability based upon a claimant's age, education, and previous work experience.  *Id.*

vocational expert testimony to establish that jobs exist. *Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). *See also Bolton v. Callahan*, 984 F. Supp. 510, 513-14 (N.D. Tex. 1997); *Frazier v. Chater*, 903 F. Supp. 1030, 1034 (N.D. Tex. 1995).

There are two exceptions to these general principles. "First, even when a claimant has a nonexertional impairment, the Commissioner may nevertheless rely exclusively on the [GRIDS] to determine whether work exists in the national economy [that the] claimant can perform if (a) the ALJ determines that the nonexertional impairment does not significantly affect the claimant's RFC, and (b) substantial evidence supports that determination. *Nobles*, 2002 WL 553735, at *4 (citing *Newton v. Apfel*, 209 F.3d at 458). "Second, even when a claimant's RFC is so significantly affected by a nonexertional impairment as to preclude resort to the [GRIDS] for a disability determination, the [GRIDS] may nevertheless be consulted as a 'framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.'" *Nobles*, 2002 WL 553735, at *4 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2)).

In this case, as stated above, the ALJ found at Step Two that Barnes suffered from the severe impairments of an injury to his cervical spine, a history of back surgeries, and a history of bilateral carpel tunnel syndrome. He then went on to find that Barnes had the RFC to perform "the physical exertional requirements of light work" and that there were "no significant nonexertional limitations." (Tr. 17.) Based upon this RFC determination, the ALJ found at Step Four that Barnes was unable to perform his past relevant work. (Tr. 17.) At Step Five, relying on the GRIDS, the ALJ determined that Barnes was not disabled. (Tr. 18.)

Barnes argues that his nonexertional limitations of pain, carpal tunnel syndrome, and right arm limitations should have prevented the ALJ from using the GRIDS at Step Five. (Pl.'s Br. at 5-6.)  The first question is whether the impairments of pain, carpal tunnel syndrome, and right arm limitations are, in fact, nonexertional limitations as the ALJ does not distinguish which of Barnes' impairments are exertional and which are nonexertional.  "It is the nature of an individual's limitations or restrictions that determines whether the individual will have only exertional limitations or restrictions, only nonexertional limitations or restrictions, or a combination of exertional and nonexertional limitations or restrictions."  Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).  An exertional limitation addresses an individual's limitations of physical strength and his ability to perform the seven strength demands of sitting, standing, walking, lifting, carrying, pushing, and pulling.  SSR 96-8p, 1996 WL 374184, at *5; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e); SSR 96-4p, 1996 WL 374187, at *1-2 (S.S.A. July 2, 1996).  A nonexertional limitation refers to work-related limitations and restrictions that are not exertional, such as mental abilities, hearing, seeing, speaking, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, feeling, and environmental restrictions.  SSR 96-8p, 1996 WL 374184, at * 6; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e); SSR 96-4p, 1996 WL 374187, at *1-2.  Some limitations can be both exertional and nonexertional. *Id.*

In this case, evidence in the record suggests that Barnes' pain, bilateral carpal tunnel, and right arm limitations would be, at the very least, nonexertional impairments as the medical evidence indicates that they impact his ability to, *inter alia*, crawl, reach, handle, finger, and feel.  For instance, as to Barnes' carpel tunnel, Richard Hastings, D.O., Ph.D ("Hastings"), opined that Barnes

8

should avoid repetitive hand activities such as handling, fingering, and feeling, due to his "documented carpal tunnel syndrome." (Tr. 15; *see* Tr. 13, 277.)  In addition, Hastings opined, *inter alia*, that Barnes should never crawl or reach. (Tr. 276-77.)  Furthermore, as to Barnes' pain, Barnes complained, *inter alia*, of pain in his shoulder with difficulty reaching out, upward, and overhead and pain in his right forearm, hand, and wrist with weakness in grasping. (Tr. 13; *see* Tr. 209.)  As to Barnes' right arm limitations, R. Tyler Boone, M.D., opined that Barnes could work as long as he avoided any use of the right arm. (Tr. 14; *see* Tr. 220.)  Such a limitation would obviously preclude Barnes from reaching, handling, and other nonexertional activities.

Because Barnes does suffer from several nonexertional activities, the next question is whether such nonexertional impairments significantly affected his RFC.  After finding that Barnes suffered from several severe impairments, including the nonexertional impairment of bilateral carpal tunnel syndrome, the ALJ, after working through the five-step disability benefit process, held that Barnes' had "no significant nonexertional limitations," and, thus, proceeded to apply the GRIDS instead of consulting a VE at Step Five. (Tr. 17.)  However, there is a line of cases that hold such a decision by the ALJ is erroneous and cannot be supported by substantial evidence because it is internally inconsistent for the ALJ to find that a nonexertional impairment is severe[4] at Step Two and then find at Step Five that the GRIDS are applicable because the claimant does not have any nonexertional impairments that significantly affect the claimant's RFC.[5]

---

[4] According to the regulations, a severe impairment is one that significantly limits a claimant's ability to work. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

[5] *See, e.g., White v. Astrue*, 239 F. App'x 71, 73-74 (5th Cir. 2007) ("An ALJ's finding of a severe non-exertional impairment at step two precludes the ALJ from relying solely on the Grid Rules at step five."); *Hearne v. Barnhart*, 111 F. App'x 256, 257-58 (5th Cir. 2004) ("In *Loza* [*v. Apfel*, 219 F.3d 378, 391, 398-99 (5th Cir. 2000)], this court linked the definition of a 'severe' impairment at Step Two to the determination of whether a claimant's

However, there is also a line of case that does not seem to accept, at face value, the idea that an ALJ cannot apply the GRIDS at Step Five just because the ALJ found a nonexertional impairment severe at Step Two. *See, e.g., Guillory v. Barnhart*, 129 F. App'x 873, 874 (5th Cir. 2005) (rejecting the claimant's argument that the "ALJ's finding that her nonexertional impairments, in conjunction with her physical impairments, were severe at Step Two precluded the ALJ from finding that they were insignificant at Step Five"); *Martin v. U.S. Comm'r Soc. Sec.*, No. 06-1349, 2008 WL 294487, at *1 (W.D. La. Feb. 1, 2008) (stating that a "finding of a severe mental impairment at step two does not necessarily preclude use of the [GRIDS as] [t]he impairment must also have a significant effect on the claimant's RFC to render use of the [GRIDS] inappropriate"). *See also Roccatagliata v. Barnhart*, No. SA-05-CA-0505 OG (NN), 2006 WL 2290566, at *7 (W.D. Tex. Aug. 7, 2006) (finding, *inter alia,* that the ALJ's reliance on the GRIDS was improper when the ALJ found at Step Two that the claimant had severe nonexertional impairments but did not "determine that plaintiff's RFC was not significantly affected by her non-exertional impairments"). Instead, the dispositive issue in these cases appears to be whether there is substantial evidence to support the ALJ's finding at Step Five that the nonexertional impairments

---

nonexertional impairments significantly affected his [RFC] such that reliance solely upon the Grid Rules at Step Five would be inappropriate."); *Charpentier v. Astrue*, No. 09-1034-RET-SCR, 2011 WL 2222262, at *4 n.13 (M.D. La. Mar. 11, 2011) ("A finding that a claimant's nonexertional impairments in combination with exertional impairments are 'severe', means by definition of that term, that the nonexertional impairments significantly limit the claimant's ability to do basic work activities."); *Pedigo v. Astrue*, No. 4:09-CV-2513, 2010 WL 3808687, at *4 (S.D. Tex. Sept. 27, 2010) ("The Fifth Circuit . . . has held consistently that a Step Two finding that a nonexertional mental impairment is "severe" precludes an ALJ from relying solely upon the Grid Rules when making the Step Five determination."); *Rocha v. Astrue*, No. 2:04-CV-0324, 2008 WL 763070, at *5-6 (N.D. Tex. Mar. 21, 2008) (holding that substantial evidence could not support the ALJ's determination at Step Five that the claimant's nonexertional impairments were not significant after finding at Step Two that the claimant suffered from several severe nonexertional impairments at Step Two); *Allsbury v. Barnhart*, 460 F. Supp. 2d 717, 726 (E.D. Tex. 2006) (finding that: (1) ALJ erred in applying the GRIDS at Step Five when the ALJ failed to make a finding that claimant's nonexertional impairments did not significantly affect claimant's RFC; (2) it would have been internally inconsistent for ALJ to make such a finding when he found claimant's nonexertional impairments, in combination, to be severe; and (3) any such finding would not have been supported by substantial evidence.).

did not significantly affect the claimant's RFC.  If substantial evidence does exist, then the ALJ's use of the GRIDS at Step Five is appropriate regardless of what impairments the ALJ found severe at Step Two.  If not, then remand is required.

Even assuming such line of cases is applicable, the Court still finds that the ALJ erred at Step Five in applying the GRIDS because substantial evidence does not support his decision that Barnes did not have any significant nonexertional limitations.  In this case, the ALJ specifically held at Step Two that Barnes suffered from several severe impairments, including bilateral carpal tunnel syndrome.  (Tr. 12.)  The ALJ then analyzed the medical evidence in the record.  (Tr. 12-17.) Specifically, the ALJ acknowledged that there was various medical evidence relating to Barnes' right arm injury, carpal tunnel syndrome, and symptoms of pain.  The ALJ, however, failed to specifically discuss why he was discounting these nonexterional impairments.  Instead, the ALJ appears to focus on the fact that one doctor opined on October 16, 2009 that Barnes was a "symptom magnifier" and "has exaggerated his symptoms."  (Tr. 14; *see* Tr. 223.)  Although this opinion might constitute sufficient evidence to discount Barnes' complaints of pain, it does not provide substantial evidence to disregard the multiple instances of medical evidence in the record indicating that Barnes does suffer from carpal tunnel syndrome and has problems using his right arm.[6]  The ALJ wholly failed to provide any explanation for why he concluded that Barnes' nonexertional impairments of carpal tunnel syndrome and right arm issues were not significant.

---

[6] The Court notes that Jean Bernard, M.D., opined in an EMG Report dated October 9, 2009 that there was no electrodiagnostics evidence showing that Barnes had right sided cervical radiculopathy, right sided cervical plexopathy, right sided ulnar neuropathy or right median neuropathy and no evidence or sensory or motor axonal loss.  (Tr. 242.) The ALJ appears to rely heavily on this report as well.  However, the ALJ never clearly reconciles this report with another EMG report dated October 8, 2009 in which John E. Cattaneo, M.D., opined that Barnes' left median nerve, left and right median palmar sensory nerves and left dorsal ulnar sensory nerve were abnormal.  (Tr. 272-73; *see* Tr. 14.)

"While the Fifth Circuit does not require the ALJ to explain every detail of his opinion, where an internal inconsistency exists, the ALJ needs to provide sufficient explanation so a reviewing court is not left to speculate as to his reasons for ruling the way he did." *Rocha*, 2008 WL 763070, at *6. Because there is a difference between the ALJ's severe assessment of Barnes' nonexertional impairments at Step Two and his assessment at Step Five, "[t]he ALJ should have explained why the impairment was severe at the earlier step, but not severe at the latter." *Id.* "Ás the ALJ's sole reliance upon the [GRIDS] for purposes of satisfying the Commissioner's burden at Step Five was erroneous, the ALJ's finding that [Barnes] was not entitled to disability insurance benefits was not supported by substantial evidence." *Hearne*, 111 F. App'x at 258. Consequently, this case must be remanded.

In light of the Court's recommendation that this matter be remanded as previously set forth herein, the Court does not express a ruling on the remaining issues. Upon remand, the ALJ should reconsider such issues.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings and conclusions.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de*

*novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until **March 19, 2012** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED March 5, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

13